THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KARINA SAYERS, Appellant. [883 NYS2d 142]—

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Knopf, J.), rendered May 11, 2007, convicting her of criminal contempt in the first degree, criminal contempt in the second degree, and aggravated harassment in the second degree (two counts), and imposing sentence.

Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and the matter is remitted to the Supreme Court, Queens County, for a new trial.

The defendant Karina Sayers was convicted of criminal

contempt in the first degree, criminal contempt in the second degree, and two counts of aggravated harassment in the second degree, arising from several incidents occurring in September and October 2006, when telephone calls allegedly were made to the complainant, threatening the complainant's life. On appeal, the defendant contends that she was deprived of a fair trial by the cumulative effect of the improper admission of evidence of uncharged crimes allegedly committed by her and her codefendant against the complainant, improper remarks by the prosecutor in his opening and closing statements, and defective limiting instructions by the Supreme Court. We agree.

As a threshold matter, contrary to the People's argument to this Court, the defendant's contention that the Supreme Court erred in admitting the evidence of uncharged crimes since they did not fall under any exception to the *Molineux* rule (*see People v Molineux*, 168 NY 264 [1901]) is preserved for appellate review (*see* CPL 470.05 [2]; *cf. People v James*, 262 AD2d 500, 501 [1999]).

At the *Molineux* hearing, the prosecutor explained that the complainant and the codefendant, who was then the defendant's boyfriend, had a previous relationship and had two children together. The People requested that they be permitted to present testimony, on their direct case, regarding prior incidents that had occurred on seven different occasions during 2004, 2005, and 2006. This evidence included, inter alia, prior convictions of the codefendant, photographs of the complainant purportedly showing injuries she sustained after incidents in 2005 and 2006, and orders of protection issued against both the defendant and the codefendant resulting from the prior incidents. Notably, of the prior incidents, all involved the complainant and the codefendant, but only the two occurring in 2006 also involved the defendant.

The People argued that evidence of the incidents was admissible to prove that both the defendant and the codefendant had motive and intent to commit the charged crimes; to refute any claims of mistake or fabrication; as background information; to show a pattern of behavior or modus operandi; and to show identity. The defendant joined in the arguments made by the codefendant that fear of "fabrication" was not a recognized *Molineux* category, that the intent, absence of mistake, and modus operandi categories under *Molineux* were inapplicable in this case, and that granting the People's application in full would create a series of "mini trials." In addition, the defendant expressly argued that most of the incidents the People sought to elicit had nothing to do with her and that the admission of such

evidence would have a "spill-over effect" adverse to her. Further, the defendant argued that, given the nature of her current relationship with the codefendant, any prejudicial information about him would "absolutely" prejudice her.

The motion court concluded that it was "inadvisable to separate out the history between the parties being that there [was] a connected chain of events" leading up to the instant charges, which comprised "all one package." The court also considered whether, on balance, the probative value of the evidence sought to be admitted outweighed its prejudicial effect; upon concluding that it did, the court granted the People's *Molineux* application in its entirety. The court found that the evidence sought to be admitted was probative and relevant to the instant charges and fit within the recognized *Molineux* exceptions pertaining to motive, intent, absence of mistake or accident, and common scheme or plan. The court rejected the People's arguments regarding the application of any *Molineux* exception pertaining to identity and fabrication. Further, the court advised the defendant that it would instruct the jury not to consider the evidence regarding the codefendant's prior convictions, for any reason, with respect to the defendant.

At trial, at the beginning of the People's case and immediately prior to the complainant's testimony, the court gave the jury a limiting instruction regarding the admission of the evidence of prior bad acts. The court characterized that evidence as pertaining to "past incidents and background information and things that led up to the events that are presented in this case." The court then stated to the jury, "I am instructing you that I am admitting this evidence of alleged prior actions of the *defendant or defendants*, as the case may be, on various issues. And I am instructing you whether or not you can consider this evidence" (emphasis added). The court then advised the jury that it could consider that evidence on the issues of intent, motive, and as background material, "[t]o explain the relationship between parties and . . . provide you with the necessary background material to explain what led up to the alleged actions in this case."

At that juncture, however, immediately before the complainant testified, the court did not expressly limit, to the case against the codefendant, the evidence of uncharged crimes regarding the codefendant. Moreover, the court also stated, "[w]hat you are not to consider this evidence on is, *solely on the issue of propensity to commit the crime* because that would be improper" (emphasis added). No objection was made to the foregoing instruction, and the jury acknowledged that it was clear on what was said. Taken literally, the instruction, as

stated, rather than indicating that the evidence of uncharged crimes could not, under any circumstances, be considered on the issue of propensity at all, gave the erroneous impression that the jurors were permitted to consider such evidence on propensity, but not solely on propensity (*see People v Hudy*, 73 NY2d 40, 55 [1988]). Further, it was particularly prejudicial to the defendant that there was no instruction prior to the admission of this evidence on the People's case limiting its application to the codefendant only, so as to avoid the spill-over effect to which she had taken exception at the *Molineux* hearing (*cf. People v Till*, 87 NY2d 835, 837 [1995]).

During the presentation of the defendant's case, the court, at the defendant's request, gave another instruction to the jury during the cross examination of the codefendant, intending to limit the codefendant's testimony as to the case against him, so as to avoid the spill-over effect described by the defendant. The instruction fashioned by the court, however, failed to ameliorate the potential prejudice, up to that point, of the complainant's prior testimony that was adduced during the People's case, as well as the cross examination of the codefendant that had commenced on the Friday of the prior week, all of which was heard by the jury before such limiting instruction was given. Indeed, the instruction was not given until the continuation of the cross examination of the codefendant was already underway on the morning of the following Monday. Moreover, the instruction as given, to wit: "consider the evidence only as it relates to each defendant and *then consider the evidence that relates to that defendant separately as to each of the defendants* . . . certain evidence, what this defendant said or did, that has nothing to do with the codefendant" (emphasis added), did not fully serve to eliminate confusion regarding the applicability of the codefendant's testimony to the defendant's case.

Similarly, although the court, during the final charge, properly conveyed that evidence of uncharged crimes could not be "considered for the purpose of propensity," where, as here, the evidence of the codefendant's prior bad acts permeated the trial, the latter instruction did not ameliorate the potential prejudice to the defendant caused by the earlier improper instruction, which misguided the jury throughout the People's case (*see e.g. People v Resek*, 3 NY3d 385, 387-390 [2004]; *see generally People v Kenner*, 8 AD3d 296, 298 [2004]). This is particularly so "in view of the questionable effectiveness of cautionary instructions in removing prior crime evidence from" a jury's consideration, as the court is required to do where the potential for prejudice outweighs the probative value of such evidence (*People v Ventimiglia*, 52 NY2d 350, 361-362 [1981]).

While generally, some evidence of uncharged crimes can be properly admitted as background material to complete the narrative to the extent that it is inextricably interwoven with the events leading to the crimes charged and to explain the relationship among the parties (*see People v Montanez*, 41 NY2d 53, 58 [1976]; *People v Santiago*, 27 AD3d 768 [2006]; *People v Jones*, 9 AD3d 374, 375 [2004]), " 'the introduction of such [background] evidence must be carefully monitored by the trial judge, as it is an accommodation that the general rules of evidence must at times make to the exigencies of the particular instance. . . . Every precaution must be taken lest it spill over its barriers and distort the jury's contemplation of the determinative and critical evidence' " (*People v Stanard*, 32 NY2d 143, 146 [1973], quoting *People v Gleason*, 285 App Div 278, 281-282 [1954]; *see Bedell v United States*, 78 F2d 358, 364 [1935], *cert denied* 296 US 628 [1935]).

Here, as a result of the trial court's failure to parse the testimony and instructions relating to evidence of uncharged crimes (*see People v Ventimiglia*, 52 NY2d at 361), the overwhelming majority of evidence presented at trial pertained to the prior bad acts of the codefendant, rather than the instant offenses of which the defendant was convicted. Thus, even though such evidence fit within recognized *Molineux* exceptions, such as motive and intent, and as relevant background material enabling the jury to understand the relationship between the complainant and both the defendant and codefendant (*see People v Timmons*, 54 AD3d 883, 885 [2008]; *People v Farmer*, 54 AD3d 871, 872 [2008]; *People v Laverpool*, 52 AD3d 622 [2008]; *People v Howe*, 292 AD2d 542 [2002]), the sheer volume of such evidence which did not pertain to the defendant unduly prejudiced her (*see generally People v Cook*, 42 NY2d 204, 208 [1977]). Moreover, even if evidence of uncharged crimes *is* offered for a legitimate purpose, such evidence must be excluded if its potential for prejudice outweighs its probative value (*see People v Till*, 87 NY2d at 836; *People v Hudy*, 73 NY2d at 55). As to the defendant, the prejudice was manifest and clearly outweighed its probative value (*see People v Montanez*, 41 NY2d at 58).

The defendant's contentions that the prosecutor made improper comments in his opening and closing statements with respect to the evidence of uncharged crimes are largely unpreserved for appellate review (*see* CPL 470.05 [2]; *People v McClary*, 17 AD3d 699 [2005]). We nonetheless exercise our interest of justice jurisdiction to reach those contentions, and find that the prosecutor's comments in his opening statement

that "the past demonstrates a pattern of behavior committed by *these defendants*," and in summation that "the past events show a pattern of behavior that you can decide whether or not the *defendants* committed a crime here," (emphasis added) when coupled with the court's improper instructions regarding propensity, and the lack of relevance of the vast majority of the past events to the defendant, were unduly prejudicial to her and deprived her of a fair trial. Thus, under the particular circumstances of this case, it cannot be said that the errors were harmless. Cumulatively, there was a significant probability that the errors contributed to the defendant's convictions (*see People v Pergya*, 53 AD3d 631 [2008]; *People v Silva*, 187 AD2d 467, 468 [1992]).

Accordingly, the judgment of conviction must be reversed and a new trial ordered. Skelos, J.P., Fisher, Miller and Eng, JJ., concur.