[892 NYS2d 535]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v FREDER-
ICK WILKINSON, Respondent.

Second Department, January 19, 2010

250

**APPEARANCES OF COUNSEL**

*Michael A. Gajdos*, Patchogue, for appellant.

*Thomas J. Spota, District Attorney*, Riverhead (*Grazia DiVincenzo* of counsel), for respondent.

**OPINION OF THE COURT**

FISHER, J.P.

The issue presented on this appeal is whether the admission of evidence that the defendant, a 65-year-old owner of a taxi service on trial for a single sale of cocaine, sold drugs to the same buyer on several prior occasions was error requiring a new trial. We hold that it was.

On April 20, 2007, at a bar in Westhampton Beach in Suffolk County, an undercover police officer allegedly saw the defendant

hand a knotted clear plastic bag containing a white substance to another person in exchange for cash. The two men left the bar separately. Believing that the officer had witnessed a drug sale, police stopped the buyer's truck and recovered a knotted clear plastic bag containing what proved to be cocaine. The buyer inculpated the defendant, who was arrested some two hours later. At the time of his arrest, the defendant was not in possession of any drugs. He was subsequently charged with criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree. The buyer was charged with a misdemeanor relating to his possession of the cocaine, but he agreed to testify for the prosecution in return for the dismissal of his case.

Before trial, the prosecutor made an application pursuant to *People v Ventimiglia* (52 NY2d 350, 361-362 [1981]) for permission to elicit testimony from the buyer that, prior to the night in question, he had purchased narcotics from the defendant on 5 or 10 occasions. The prosecutor argued that such evidence was admissible because it was probative on the question of the identity of the defendant as the person who sold the drugs and as to "the absence of mistake." Defense counsel opposed the application, arguing that the defendant would not claim misidentification, but only that he did not sell drugs to the buyer that night. The County Court denied the prosecutor's application on the ground that the evidence of prior sales would be more prejudicial than probative. It advised the parties, however, that proof of the uncharged sales might become admissible in rebuttal depending on the evidence presented.

At trial, the buyer testified, inter alia, that he had called the defendant on the day of the charged sale and arranged to meet him at the bar, where he purchased one gram of cocaine from him for $80. On cross-examination, defense counsel sought to establish that the buyer had cooperated with the prosecutor and the police only to extricate himself from his own legal difficulty, and had named the defendant as the seller only because the police wanted him to do so. Additionally, in answer to a question posed by defense counsel, the buyer acknowledged that he knew that a misdemeanor possession charge was less serious than a sale charge.

When the cross-examination of the buyer was completed, the prosecutor renewed his application to introduce evidence of prior drug sales, arguing that the defense had "opened the door into a number of defenses, including mistake." The prosecutor

maintained that, by asking the buyer about the difference in seriousness between a sale of drugs and misdemeanor possession, defense counsel had suggested that the buyer had sold the drugs to the defendant, rather than the other way around. According to the prosecutor, "[t]hat is a classic case of a mistake defense." The court agreed that the cross-examination had opened the door and, as a consequence, permitted the prosecutor to elicit from the buyer that he had purchased drugs from the defendant on "more than 10" prior occasions. The buyer testified that he would simply call the defendant and say, "[i]t's me." No discussion of price or quantity would be necessary. The court gave a limiting instruction regarding this evidence, telling the jury that an accused's "alleged commission of other bad acts or crimes is not admissible solely to establish a criminal disposition or propensity," that the defendant cannot be convicted of one crime because he or she committed another crime or bad act, and that the evidence was "admissible as necessary in order for [the jury] to understand other parts of the testimony . . . to complete the narrative or description of the events so as not to have those events received in a vacuum." The court stated that, even if believed, the testimony about prior drug sales "may not give rise to even an inference that [the defendant] committed any or all of the crimes charged in the indictment."

The prosecution's remaining witnesses were police officers. The undercover officer testified that, from approximately seven feet away, she saw the buyer walk up to the defendant in the bar and speak with him briefly. She then saw the defendant give the buyer a small clear plastic bag containing a white substance, and saw the buyer hand the defendant a sum of money. The testimony of other officers established that the police backup team had followed the buyer as he left the bar and drove away, and had stopped his vehicle, discovered the bag of cocaine, and placed him under arrest.

In its final instructions, the court repeated that the evidence of prior sales was not admitted to prove the defendant's propensity to commit the charged crimes, but to allow the jury to understand the buyer's relationship with the defendant and "to complete the narrative or description of the events so as not to have those events received in a vacuum." The jury convicted the defendant of both criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree. The court sentenced the defendant to two determinate prison terms, each of nine years, to run

concurrently. On appeal, the defendant contends, inter alia, that the verdict was against the weight of the evidence, and that he was deprived of a fair trial by the admission of the buyer's testimony regarding uncharged sales.

■■ When conducting an independent review of the weight of the evidence (*see* CPL 470.15 [5]; *People v Danielson,* 9 NY3d 342 [2007]), we accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (*see People v Mateo,* 2 NY3d 383, 410 [2004], *cert denied* 542 US 946 [2004]; *People v Bleakley,* 69 NY2d 490, 495 [1987]). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (*see People v Romero,* 7 NY3d 633 [2006]). We are nevertheless constrained to reverse the judgment and order a new trial because the admission of the buyer's testimony regarding alleged prior uncharged sales was error that cannot be disregarded as harmless.

In any drug sale case, it is entirely logical for a jury to conclude that, if the defendant is shown to be a dealer who has sold drugs in the past, he or she is likely to have sold drugs, as charged, on a particular occasion. The long-standing rule carefully limiting evidence of a defendant's prior criminal acts, however, is not one of logic but one of policy, for as Chief Judge Cardozo wrote for the Court of Appeals nearly 80 years ago, "[i]nflexibly the law has set its face against the endeavor to fasten guilt upon [a defendant] by proof of character or experience predisposing to an act of crime" (*People v Zackowitz,* 254 NY 192, 197 [1930]). Indeed, more than 40 years before that, the Court observed that "[t]he general rule is that when a man is put upon trial for one offense, he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone, and that, under ordinary circumstances, proof of his guilt of one or a score of other offenses in his lifetime is wholly excluded" (*People v Sharp,* 107 NY 427, 467 [1887, Peckham, J.]). The reason for the rule is to avoid the danger that the jury will "misfocus . . . on [the] defendant's prior crimes rather than on the evidence—or lack of evidence—relating to the case before it" (*People v Rojas,* 97 NY2d 32, 36-37 [2001]), and will, even though not fully convinced of the defendant's guilt of the crime charged, nevertheless "find against him because his conduct generally merits punishment" (*People v Allweiss,* 48 NY2d 40, 46 [1979]; *see People v Gillyard,* 13 NY3d 351, 355-356 [2009]; *People v Arafet,* 13 NY3d 460, 464-465 [2009]).

■ On the other hand, where evidence of a defendant's prior misconduct bears directly on an issue that is both relevant and material to the case on trial, its probative value may well justify its admission notwithstanding the potential for prejudice (*see People v Dorm,* 12 NY3d 16, 19 [2009]; *People v Santarelli,* 49 NY2d 241, 247 [1980]; *People v Jackson,* 39 NY2d 64, 68 [1976]). Thus, in the seminal case of *People v Molineux* (168 NY 264, 293 [1901]), the Court of Appeals wrote:

> "[g]enerally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial."

This list is "merely illustrative and not exhaustive" (*People v Rojas,* 97 NY2d at 37; *see People v Arafet,* 13 NY3d at 465; *People v Dorm,* 12 NY3d at 19; *People v Jackson,* 39 NY2d at 68), and evidence of prior crimes has been held admissible in such additional circumstances as, for example, when the People are required to establish the defendant's "guilty knowledge" and the prior crimes evidence is probative on that issue (*People v Ingram,* 71 NY2d 474, 481 [1988]; *People v Alvino,* 71 NY2d 233, 242, 244-245 [1987]), or when the evidence helps prove that a defendant, who contends otherwise, was acting in concert with another (*see People v Carter,* 77 NY2d 95, 107 [1990], *cert denied* 499 US 967 [1991]). Evidence of prior misconduct has also been held admissible to provide the jury with "necessary background information on the nature of [a] relationship" (*People v Dorm,* 12 NY3d at 19), or when necessary to complete a narrative (*see People v Green,* 56 AD3d 490 [2008]), "fill in gaps in 'interwoven events' . . . [to] help the jury understand the case in context" (*People v Resek,* 3 NY3d 385, 389 [2004]), or "sort out ambiguous but material facts" (*id.* at 390). Nevertheless, even where the court determines that the proffered evidence of prior crimes would be probative on a relevant and material issue, it must still conduct a "discretionary balancing of the probative value and the need for the evidence against the potential for delay, surprise and prejudice" (*People v Alvino,* 71 NY2d at 242; *see People v Gillyard,* 13 NY3d 351, 355-356 [2009]; *see People v Cook,* 93 NY2d 840, 841 [1999]; *People v Marji,* 43 AD3d 961 [2007]). When an issue, although relevant and material, is

clearly uncontested, evidence of prior crimes related to it will not likely be necessary and therefore should rarely be admitted (*cf. Dallas v Goldberg,* 143 F Supp 2d 312, 318 [2001]). Turning to the case at bar, it is fair to say that there is usually no issue of motive in a drug sale case, as the seller's motivation is nearly always financial gain. The defendant here did not suggest that he handed the bag to the buyer not realizing that it contained cocaine, or that he had possessed what he knew to be cocaine but did not intend to sell it to the buyer, and therefore there is no issue here of "guilty knowledge" or intent. The defense specifically renounced any defense of misidentification, and the sale here was never alleged to be part of a common scheme or plan embracing the commission of two or more crimes. The court, however, found that the evidence was relevant to the jury's understanding of the buyer's relationship with the defendant, and "to complete the narrative or description of the events so as not to have those events received [by the jury] in a vacuum." The prosecutor argued that the evidence was admissible for the additional purpose of establishing the absence of mistake, a traditional *Molineux* exception, because, in the prosecutor's view, the defense's implication that the defendant had purchased rather than sold the drugs amounted to "a classic case of a mistake defense." We find that, in this case, which involves an alleged straightforward hand-to-hand drug transaction observed by an undercover officer and testified to by the alleged buyer, the receipt of evidence of uncharged sales was unjustified.

Where a drug sale case rests on evidence of a single observed sale by a seller who is quickly arrested, evidence that the defendant had made additional drug sales on other occasions is rarely if ever admissible merely "to complete the narrative" (*cf. People v Resek,* 3 NY3d at 389-390; *People v Godbold,* 55 AD3d 339 [2008]). The notion of completing a narrative may not be expanded to encompass chapters far removed from the charged crime. Moreover, in a drug sale case, the prior relationship, or lack of it, between a seller and a buyer is generally irrelevant, as the only issue is whether the defendant sold drugs on a particular occasion.* Notably, there was nothing ambiguous about the alleged transaction here that would have been clarified by evidence of a prior relationship between the defendant and the

---

* Evidence of prior misconduct to establish the nature of a relationship between the defendant and another person is most often received in cases involving sex offenses or charges of domestic violence where the relationship between the defendant and the victim frequently has a direct bearing on the

buyer, nor was there any evidence that, in the course of the transaction, the defendant and the buyer had been overheard speaking of their relationship in connection with prior drug dealings. Thus, evidence of prior drug sales between the two was not admissible as inextricably intertwined with the charged crime (*cf. People v Vails,* 43 NY2d 364, 368 [1977]).

Finally, the prosecutor's argument that evidence of uncharged drug sales became admissible because of defense counsel's suggestion that the defendant was the purchaser rather than the seller of the cocaine was clearly wrong. In essence, the prosecutor was arguing that, whenever a defendant claims that the prosecution's accusation against him or her is mistaken, evidence of other crimes becomes admissible under the traditional *Molineux* exception to demonstrate the absence of mistake. To the contrary,

> "absence of mistake 'on behalf of the government' is not a legitimate basis to admit other acts evidence . . . Rather, it is a restatement of the primary reason for which the evidence is *not* admissible; that is, to suggest that the defendant is guilty (the government is not mistaken) because he committed the same or other crimes before" (*United States v Merriweather,* 78 F3d 1070, 1077 [1996]).

Laid bare, the prosecutor here advanced what amounted to a pure propensity argument, urging the jury to find that there was no mistake that the defendant had sold drugs to the buyer on the night in question because he had sold drugs to the buyer before.

We come, then, to the question of whether the error in admitting the evidence of uncharged drug sales may be overlooked as harmless (*see* CPL 470.05 [1]). Our Court of Appeals has recently taught that the erroneous admission of evidence of uncharged crimes is harmless "where 'the proof of the defendant's guilt, without reference to the error, is overwhelming' and where there is no 'significant probability . . . that the jury would have acquitted the defendant had it not been for the error' " (*People v Arafet,* 13 NY3d at 467, quoting *People v Crimmins,* 36 NY2d 230, 241-242 [1975]). Here, the testimony of the alleged buyer was impeached in several respects and the defendant, who was not detained at the scene, was arrested hours af-

issues at trial (*see People v Leeson,* 12 NY3d 823 [2009]; *People v Dorm,* 12 NY3d at 19; *People v Cook,* 93 NY2d at 841).

ter the alleged transaction not in possession of any drugs. We cannot conclude that this evidence was overwhelming and, therefore, we cannot find that the error was harmless. Moreover, even if the evidence of guilt were seen as overwhelming, we still could not find the error harmless because we cannot conclude that there was no significant probability that the jury would have acquitted the defendant had it not been for the error, as compounded by the prosecutor. The prosecutor was permitted to ask the undercover officer a long series of questions about her "investigation into [the defendant's] narcotics trafficking." And, in summation, the prosecutor emphasized the evidence of uncharged crimes by telling the jury that the buyer, wanting drugs, "called his cocaine dealer, Frederick Wilkinson," and followed the routine established in their "business relationship" as reflected by their past transactions. Finally, the court's limiting instructions were insufficient to allay the prejudice caused by the erroneous admission of evidence of uncharged sales. Although the court warned the jury that the evidence was not admitted to show propensity, it never described a legitimate purpose for which the evidence could be used in the case. Indeed, telling the jury that evidence of the defendant's prior drug sales to the buyer was being offered to demonstrate the buyer's relationship with the defendant and "to complete the narrative or description of the events so as not to have those events received in a vacuum" invited the jury to use the evidence as proof that the defendant was the buyer's regular drug supplier who likely acted in that capacity on the charged occasion.

In sum, because the evidence of prior crimes served no legitimate purpose and because the error in its admission cannot be disregarded as harmless, the judgment should be reversed, and the matter remitted to the County Court, Suffolk County, for a new trial. In light of our determination, we need not reach any of the defendant's remaining contentions.

FLORIO, COVELLO and DICKERSON, JJ., concur.

Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and the matter is remitted to the County Court, Suffolk County, for a new trial.