[29 NYS3d 358]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAY-
SHAWN SINGLETON, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MALIK
HAWKINS, Appellant.

First Department, April 19, 2016

### APPEARANCES OF COUNSEL

*Robert S. Dean, Center for Appellate Litigation*, New York City (*Claudia B. Flores* of counsel), for Rayshawn Singleton, appellant.

*Richard M. Greenberg, Office of the Appellate Defender*, New York City (*Leila N. Tabbaa* and *Rosemary Herbert* of counsel), for Malik Hawkins, appellant.

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Dana Poole* and *Lindsey Richards* of counsel), for respondent.

### OPINION OF THE COURT

RICHTER, J.

In this prosecution for criminal possession of a weapon in the second degree, the trial court improperly admitted highly prejudicial photographs showing defendants making gang signs while holding a gun different from the one they were charged with possessing. The trial court also erred in allowing the People to introduce Facebook messages sent by defendant Hawkins three months after the charged crime in which he boasted about firing various types of guns during a separate unrelated shooting incident. These photographs and messages were classic propensity evidence and lacked probative value. Even if we were to accept the People's claim that they had some relevance, the trial court abused its discretion in admitting them because the prejudicial impact on the jury greatly outweighed any probative value. Therefore, we reverse defendants' convictions and remand for a new trial.

The evidence at trial established the following. On the night of June 14, 2011, Police Officer Monteith and his partner, Police Officer Perez, were patrolling East Harlem in a police car as part of a team that targeted violent crime and gang activity. The gangs in East Harlem included the AK Boys, the Cash Money Boys, and the Fetti Boys. Officers Monteith and Perez were on "high alert" that evening due to an earlier incident in the area. As they approached 119th Street and Lexington Avenue, an area near where the Fetti Boys operated, Officer Monteith noticed a group of 3 to 4 young men arguing with another group of 8 to 10 young men. Officer Monteith described the larger group as being "on guard, on alert." As the police car approached, the smaller group walked away from the larger group and headed north on Lexington Avenue.

The officers drove up to 125th Street and circled back onto Lexington Avenue heading south. As they approached 122nd Street, which was the Cash Money Boys' territory, Officer Monteith saw an Oldsmobile double-parked on Lexington Avenue. The officer noticed that the smaller group of men that he had seen at 119th Street, whom the officer recognized as being members of the AK Boys, were congregating around the Oldsmobile. As the police car pulled up, the group of men moved toward the sidewalk, and another man, whom Officer Monteith recognized as Michael Robinson, exited the rear driver's side of the Oldsmobile. The Oldsmobile remained double-parked through a cycle of traffic lights, but eventually started to move. The officers flashed their police lights and pulled the Oldsmobile over for blocking traffic.

Officer Perez approached the driver's side of the Oldsmobile, where defendant Singleton was sitting, and Officer Monteith approached the passenger side, where defendant Hawkins sat. As he approached, Officer Monteith smelled the odor of burnt marijuana, and the officers asked the two men to step out of the vehicle. Officer Monteith searched the car and found a loaded and operable .38 caliber revolver on top of the backseat armrest near a latch that entered into the trunk. The officer also recovered a book bag and identification card from the backseat belonging to Robinson. A surveillance video introduced into evidence showed that before the police arrived at the Oldsmobile, Robinson and another man exited the rear seat of the car, went into a nearby building, and re-entered the vehicle several minutes later.

The police subsequently arrested both defendants, and Robinson, for possessing the revolver found in the backseat. A grand jury returned an indictment charging defendants with two counts of criminal possession of a weapon in the second degree, one for possessing a loaded firearm outside the home or place of business (Penal Law § 265.03 [3]), and the other for possessing a loaded firearm with intent to use unlawfully (Penal Law § 265.03 [1] [b]). After a joint jury trial, defendants were convicted of possessing the firearm outside the home or place of business, but were acquitted of possessing it with the intent to use unlawfully. Prior to the trial, Robinson, who was indicted separately, pleaded guilty to attempted second-degree weapon possession.

At trial, the court allowed the People to introduce into evidence two photographs extracted from Hawkins's cellular

phone that were taken in the two weeks prior to the incident. One photograph shows Singleton and Hawkins together, looking at the camera, with Singleton holding a revolver; both defendants are making gang signs with their hands. The other photograph depicts Hawkins holding a revolver in one hand and making a gang gesture with the other. The People concede that the guns in these photographs are not the same gun, or even the same type of gun, that defendants were charged with possessing. In addition, the court allowed the People to introduce various Facebook messages and postings, from both before and after the charged incident, in which defendants reference their gang affiliation, guns, and acts of violence. The People also introduced testimony from an expert in street lingo who interpreted the meaning of the Facebook messages and postings.

On appeal, defendants challenge the admission of the photographs, the Facebook communications, and the testimony about gang activity given by Officer Monteith. "Under the familiar rule of *People v Molineux* (168 NY 264 [1901]), evidence of uncharged crimes is inadmissible where its only relevance is to show [a] defendant's bad character or criminal propensity" (*People v Agina*, 18 NY3d 600, 603 [2012]). On the other hand, evidence of a defendant's uncharged crimes may be admissible where it is relevant to a material issue in the case other than propensity, such as intent, motive, knowledge, absence of mistake, common scheme or plan, or identity (*People v Morris*, 21 NY3d 588, 594 [2013]; *Molineux*, 168 NY at 293). "Even when admissible for such purposes, however, the evidence may not be received unless its probative value exceeds the potential for prejudice resulting to the defendant" (*People v Alvino*, 71 NY2d 233, 242 [1987]).

Judged by these principles, the trial court properly exercised its discretion in admitting some testimony about the various gangs operating in East Harlem, and Facebook communications suggesting that defendants were members of a gang (People's exhibits 3A and 4D). In light of the testimony about the argument between the AK Boys and another group on the Fetti Boys' turf, after which the AK Boys gathered around the Oldsmobile, this evidence was probative of defendants' intent to use the weapon unlawfully (*see e.g. People v Wilson*, 14 AD3d 463 [1st Dept 2005], *lv denied* 4 NY3d 857 [2005] [allowing evidence of the defendant's gang affiliation

where it was probative of the defendant's motive and was central to the jury's understanding of the incident]).*

■ The trial court, however, erred in allowing the People to introduce the two photographs showing defendants holding a gun and making gang signs. There was no evidence that the gun in the photographs had anything to do with the gun found in the car or with any other criminal activity. As previously noted, and as conceded by the People, the gun depicted was not the same gun, or even the same type of gun, as that recovered from the Oldsmobile. The mere fact that defendants were in possession of a different gun in the past is not probative of whether they knowingly possessed the weapon they were charged with possessing. Nor are the photographs probative of defendants' intent to unlawfully use the weapon found in the car. They merely show defendants displaying a gun, and do not depict any unlawful use of the weapon.

This case bears striking similarity to *People v Blair* (90 NY2d 1003 [1997]). In *Blair*, the defendant sought to prove that the drugs found in his closet had been planted by a police informant. The People called a rebuttal witness who testified that the defendant had previously supplied her with drugs retrieved from a back room in the defendant's apartment. The Court of Appeals reversed the defendant's conviction, finding that the prior uncharged crime evidence was inadmissible. The Court noted that the defense at trial was that the defendant never possessed the drugs planted in his closet. Thus, the Court concluded, the testimony about the previous drug transaction did nothing to refute that defense, but merely tended to show the defendant's propensity to sell drugs.

Likewise here, the defense at trial was that defendants did not possess the gun found in the rear of the car. Defendants claimed that they had no knowledge of the gun's presence in the vehicle, and that the weapon belonged to Robinson, who occupied the backseat area where it was found. Thus, as in *Blair*, the photographs of defendants having previously possessed a different gun did not refute their defense, but instead only showed their propensity to possess firearms (*see also People v Mercado*, 120 AD2d 619, 620 [2d Dept 1986], *lv denied* 68 NY2d

---

* Because defendants were acquitted of possession with intent to use unlawfully, the trial court on retrial shall make an independent assessment of whether this evidence has any probative value as to the remaining possession count, and if so, whether the probative value outweighs any prejudice to defendants.

759 [1986] [reversing conviction where the court admitted photographs depicting the defendant posing with handguns that were not used in the commission of the crimes charged]; *People v Seeley*, 74 AD2d 910 [2d Dept 1980] [photograph of the defendant aiming a gun, that was taken months before the charged offense, had no probative value]).

Even if, as the People argue, the photographs were relevant to the issues in this prosecution, their prejudicial impact far outweighed any probative value. The photographs, particularly in view of the gang gestures depicted and the prominence of the guns displayed, were highly inflammatory, and impermissibly served to arouse the jury's emotions by portraying defendants as dangerous gun-carrying criminals with a propensity for violence. The prejudice caused by the photographs was exacerbated when the prosecutor, in both his opening and closing statements, made explicit reference to them. In his opening, the prosecutor described the two photographs and stated that they showed that defendants "had access to firearms" and "know how to get them." In his summation, the prosecutor displayed the photographs to the jury, and repeated that defendants "have access to guns" and "are aware of where to get them," arguments impermissibly going toward propensity (*see Mercado*, 120 AD2d at 620 [noting that inflammatory nature of photographs was improperly emphasized during prosecutor's summation]). In weighing the probative value against the prejudice, it bears mentioning that there already was significant evidence in the record tying defendants to the gangs operating in East Harlem.

■ The trial court also erred in allowing the People to introduce two Facebook messages sent by defendant Hawkins three months after the charged crime. In the first message, Hawkins stated "he was lettin that Lil [s**t] go" and "[ni. . .s] on my side play wit big toys." The People's street lingo expert testified that Hawkins was talking about shooting weapons, and that "people on his side" were using larger caliber guns. In the second message, Hawkins stated "my [Ni**a] that a was a Lil 25" and "I let go 32's 38's 9's n [s**t]." According to the expert, whereas "Lil 25" referred to a small handgun, Hawkins was shooting larger caliber weapons (i.e., .32 caliber, .38 caliber and 9 millimeter) that were "conducive to more violence, more injuries."

The People concede that Hawkins was not referring to the charged crime in these messages, but to an entirely different

incident that occurred months later. Thus, these messages are far too attenuated to have any probative value as to Hawkins's knowledge of the gun found in the car or his intent to use that weapon on the day of the incident (*see People v Cortez*, 22 NY3d 1061, 1071 [2014, Lippman, Ch. J., concurring], *cert denied* 574 US —, 135 S Ct 146 [2014] ["evidence of (the) defendant's temporally remote broodings . . . was too attenuated from any act to be relevant, even under some exception to the *Molineux* prohibition"]). Even if we were to accept the People's argument that Hawkins's messages fell within a *Molineux* exception, the prejudice in admitting them far outweighed any probative value. Allowing the jury to hear Hawkins boasting about a shootout involving several different types of firearms, months after the crime on trial, could have led the jury to convict him based solely on his propensity for gun violence. Thus, defendants' convictions on the weapon charge should be reversed, and the matter remanded for a new trial.

■ The court properly denied defendants' suppression motions. During a lawful traffic stop, the police acquired probable cause to search defendants' car based on the odor of marijuana (*see e.g. People v Robinson*, 103 AD3d 421 [1st Dept 2013], *lv denied* 20 NY3d 1103 [2013]), and the police did not exceed the proper scope of such a search. The record establishes that the police found the revolver in an area that constituted part of the car's passenger compartment, readily accessible to the occupants, and that did not constitute part of the trunk. We have considered and rejected defendants' remaining arguments on the suppression issue.

In light of our decision to reverse, we need not reach defendants' remaining contentions.

Accordingly, the judgments of the Supreme Court, New York County (Edward J. McLaughlin, J., at suppression hearing; Bonnie G. Wittner, J., at jury trial and sentencing), rendered October 24, 2013, convicting defendants of criminal possession of a weapon in the second degree, and sentencing each of them to a term of five years, should be reversed, on the law, and the matter remanded for a new trial.

SWEENY, J.P., MANZANET-DANIELS and GISCHE, JJ., concur.

Judgments, Supreme Court, New York County, rendered October 24, 2013, reversed, on the law, and the matter remanded for a new trial.