People v Guevara (2020 NY Slip Op 07297)





People v Guevara


2020 NY Slip Op 07297


Decided on December 03, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 03, 2020

Before: Renwick, J.P., Gesmer, Kern, Singh, JJ. 


Index No. 527/12 Appeal No. 12230 Case No. 2017-2006 

[*1]The People of the State of New York, Respondent,
v
Jose Guevara, Defendant-Appellant.


Stephen Chu, Interim Attorney-in-Charge, Office of the Appellate Defender, New York (Gabe Newland of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Susan Axelrod of counsel), for respondent.



Judgment, Supreme Court, New York County (Laura A. Ward, J. at suppression hearing; Ruth Pickholz, J. at jury trial and sentencing), rendered June 21, 2016, as amended June 18, 2019, convicting defendant of manslaughter in the first degree, and sentencing him to a term of 20 years, unanimously affirmed.
The court should not have permitted the People to introduce photographs taken by the police of an M9 bayonet that was found in a collection of knives in defendant's bedroom, but was concededly not the weapon used in the crime. The photographs were irrelevant as demonstrative evidence (see People v Acevedo, 40 NY2d 701, 704-705 [1976]), because nothing [*2]in the record provided a basis for the court to conclude that the bayonet in the photographs resembled the weapon that defendant used to stab the victim (see People v Del Vermo, 192 NY 470, 482-483 [1908]). Even assuming that defendant's statement supported the inference that the unrecovered weapon used in the crime was also a bayonet, and that it came from defendant's collection, there was no evidence that all of defendant's bayonets, which could have come from different eras and armed forces, looked like M9s. Nevertheless, we find that the error was harmless (see People v Crimmins, 36 NY2d 230, 237 [1975]). Defendant conceded that he stabbed the victim, causing his death, and the evidence, including expert testimony, overwhelmingly refuted defendant's sole defense, which was that his actions were rendered involuntary by automatism.
The record establishes that defense counsel was denied access to defendant's second psychiatric examination by the People's expert, in violation of defendant's right to have counsel present (CPL 250.10[3]; Matter of Lee v County Ct. of Erie County, 27 NY2d 432, 444 [1971], cert denied 404 US 823 [1971]). Nevertheless, the error was harmless, because defense counsel was provided with a copy of the expert's report and permitted to cross-examine the expert on the stand. In addition, the court permitted defendant's own expert to be present during testimony by the People's expert, and permitted defense counsel to recall him if needed, and defense counsel was able to consult with the defense's expert before commencing cross-examination of the People's expert. Furthermore, nothing in the record indicates that counsel's presence at the psychiatric examination "would have enhanced that cross-examination and in any way affected the outcome" (People v Perkins, 166 AD2d 737, 740 [3d Dept 1990], lv denied 76 NY2d 1023 [1990]). We find unpersuasive defendant's arguments that this type of right to counsel violation automatically requires reversal, or that reversal is required on the particular facts presented.
The court providently exercised its discretion in prohibiting defense counsel from asking the prospective jurors during voir dire whether they could follow the "voluntary act" requirement of Penal Law § 15.10 (see People v Jean, 75 NY2d 744, 745 [1989]; CPL 270.15[1][c]]). Questioning the jury about the voluntariness of defendant's acts would have been premature, because the content of the prospective expert testimony was unclear at that point, and it also could have confused the jury given the lack of context. Further, unlike the situation in People v Miller (28 NY3d 355 [2016]), counsel was able to adequately explore the prospective jurors' views by asking them whether they could keep an open mind that defendant may not have "intended" or had a "conscious awareness" of his acts.
The court's charge thoroughly addressed defendant's automatism defense, and fully explained the requirement of a voluntary act, as set forth in Penal Law § 15.10. Because voluntary action is subsumed within the intent elements of the crimes charged, the court properly declined to instruct the jury that voluntariness is an element of the offenses. Defendant's other challenge to the court's charge is unpreserved and we decline to review it in the interest of justice. As an alternative holding, we reject it on the merits.
The court properly denied defendant's suppression motion. The arresting officer could have reasonably inferred that the security guard who reported the stabbing had a satisfactory basis of knowledge. In addition, the officer's personal observation of defendant standing in a stairwell in a manner suggesting that he was trying to hide corroborated the guard's statement (see People v Elwell, 50 NY2d 231, 237 [1993]).
We perceive no basis for reducing the sentence.
All concur except Gesmer, J. who dissents in a memorandum as follows:
GESMER, J. (dissent)
I respectfully dissent. I agree with the majority that the trial court erred in admitting into evidence two photographs of a bayonet knife belonging to defendant. However, I disagree with my colleagues that this error did not prejudice defendant. Rather, I conclude that the introduction of the photographs, even though only for demonstrative purposes, denied defendant a fair trial, especially in light of the People's improper comments about them during its summation (see People v Smith, 192 AD2d 394, 395 [1st Dept 1993], lv denied 81 NY2d 1080 [1993]). I would therefore reverse defendant's conviction and remand the matter for a new trial.
On January 2012, defendant was living in a split-level duplex apartment, which he shared with five other people, including his step-brother, Hector Thomas; his step-brother's wife, Yamila Thomas; and Ramon Wolmart, who was Yamila's best friend. In the previous months, tensions had grown between defendant on the one hand, and Hector, Yamila and Ramon on the other hand, over what defendant perceived to be their lack of respect for others in the household.
On January 31, 2012, Yamila was preparing dinner for Hector and Ramon when defendant entered the kitchen. The parties exchanged words, and a fight broke out between defendant and Ramon, which Hector joined in. At some point, defendant fell backwards and hit his head on the bottom step of a staircase. With the scuffle temporarily ceased, defendant got up and went to his bedroom. In a statement written later at the police precinct, he described what happened next:
"When I got away from [Hector and Ramon] I went down the stairs to my room. I went into my dresser-nightstand. And inside the drawer I have these collector types of bayonet knives that I purchased on-line. I grabbed one of the knives. I don't remember which one."
Meanwhile, Yamila, Hector, and Ramon began to leave the apartment. As they stepped into the outside hallway, defendant reappeared with a knife in his hand. Walking past Yamila and Hector, defendant pushed Ramon into the building's stairwell, where he stabbed him twice in the torso, killing him. In a later videotaped statement, defendant said that he swung at Ramon with one of the two knives that he grabbed from his room.
Defendant was arrested soon afterwards.
The police executed a search warrant on defendant's bedroom. They found on top of a dresser a foot-long, black bayonet with the words "M-9 Bayonet" inscribed on it. The police took photographs of the bayonet and, after running tests, determined that it contained no traces of blood or DNA and concluded that it had not been used to stab Ramon. The knife used in Ramon's stabbing was never recovered.
In their case-in-chief, the People presented defendant's written statement, defendant's videotaped statement, two photographs of the M-9 Bayonet knife that was found in defendant's bedroom, and testimony from a Crime Scene Unit detective who testified that the M-9 Bayonet knife was a "a military or survival type knife."
During the People's summation, with the two photographs of the M-9 Bayonet knife on display for the jury, the following colloquy took place:
"Prosecutor: Remember, this is a man who collects bayonets. Take a look at that weapon.
"Counsel:Objection.
"Court:What's your objection?
"Counsel:We had a conference about that.
"Court:That's not the weapon.
"Prosecutor: Right. It's a weapon similar to this, right. He said, "I collect bayonets."
"Counsel: Your Honor, there was no testimony that knife [in the photo] was similar to that.
"Court: [The jury will] decide what the testimony is.
"Prosecutor: You see what's written here [on the bayonet in the photo], it says bayonet. M-9 Bayonet. Okay. This is a man who collects bayonets.
. . .
"Prosecutor: He went and got a bayonet because you know why, there is only one use for a bayonet. Right? You don't spread jelly with a bayonet. You don't open things with a bayonet. A bayonet is designed to kill.
. . .
"Prosecutor: The army doesn't give you weapons to hurt people, right? The military doesn't say, "Here take this knife. You can really hurt guys with this." It's to kill people.
"Counsel: Objection. There's no evidence to—
"Court: It's an argument.
"Counsel: It's got to be based on evidence."
At the conclusion of the trial, the jury acquitted defendant of second-degree murder but convicted him of first-degree manslaughter as a lesser-included offense. In the instant appeal, defendant argues, among other claims, that the introduction of the photographs of the M-9 Bayonet knife outweighed their limited probative value. I agree.
"[W]hile all relevant evidence is admissible unless its admission violates some exclusionary rule, evidence is relevant only if it tends to prove the existence or nonexistence of a material fact directly at issue in the case" (People v Robinson, 143 AD3d 744, 746 [2016], lv denied 28 NY3d 1126 [2016], citing People v Jin Cheng Lin, 26 NY3d 701, 727 [2016]). Trial judges may exclude relevant evidence "'If its probative value is outweighed by certain other [*3]factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury'" (People v Powell, 27 NY3d 523, 530 [2016], quoting Holmes v South Carolina, 547 US 319, 326 [2006]).
Here, the photographs of the M-9 Bayonet knife were completely irrelevant to the charges leveled against defendant and could have been offered for no other purpose than to inflame the jury (see Smith, 192 AD2d at 395; People v Pyne, 223 AD2d 910, 911 [3d Dept 1996], lv denied 88 NY2d 940 [1996]). I reach this conclusion for several reasons. First, the People conceded that the M-9 Bayonet knife was not the murder weapon. Second, and as stated by the majority, there was no evidence that the M-9 Bayonet knife resembled the murder weapon and therefore could not be used as demonstrative evidence. Third, the mere fact that defendant possessed "collector types" of bayonet knives was not probative of his intent to unlawfully use one of them to kill Ramon (see People v Singleton, 139 AD3d 208, 213 [1st Dept 2016]). Lastly, the People have not offered any theory to show that the photographs served to rebut defendant's automatism defense (see generally People v Santarelli, 49 NY2d 241, 248 [1980][when a defendant raises an insanity defense, "evidence of uncharged criminal or immoral conduct may be admitted as part of the People's case on rebuttal if it has a tendency to disprove the defendant's claim"].
Moreover, even if the photographs of the M-9 Bayonet knife had been relevant, the People's comments about them during its summation were so prejudicial as to outweigh any possible relevance.
"It is fundamental that the jury must decide the issues on the evidence, and therefore fundamental that counsel, in summing up, must stay within the four corners of the evidence" (People v Ashwal, 39 NY2d 105, 109 [1976][internal quotation marks omitted]). The summation must be "based on a reasonable inference from the evidence" (People v Donato, 176 AD2d 125, 125 [1st Dept 1991], lv denied 78 NY2d 1127). However, where the summation is in response to a defense counsel's summation, the argument need not be based on the evidence presented (see id.).
Here, the People told the jury in its summation that a bayonet knife is designed to kill people; that killing people is the only use for a bayonet knife; that a bayonet knife is not used to open things; and that the army and military gives out weapons, like bayonet knives, to kill people. None of these statements were elicited during the testimony of any witness or made in response to defense counsel's summation, nor could they have been reasonably inferred from the evidence. Moreover, the defense had no opportunity to cure these prejudicial comments; the court overruled defense counsel's objections, stating that the People's summation was merely "an argument." Finally, given that the voluntariness of defendant's actions was the main issue for the jury to consider, the prosecutor's comments that defendant grabbed his bayonet knife because they are "designed to kill" is clearly reversible error.
As discussed above, the majority holds that the introduction of the photographs of the M-9 Bayonet knife was harmless given the overwhelming evidence of defendant's guilt. While I do not concede that the error, standing alone, was harmless, it is clear that it was significantly compounded by the People's extremely prejudicial comments in its summation (see People v McGhee, 180 AD3d 26, 37 [1st Dept 2019], lv granted, 34 NY3d 1083 [2019]). These cumulative errors deprived defendant of a fair trial, even when weighed against the significant evidence suggesting defendant's guilt. Our courts have long held that "every accused in our criminal justice system, no matter how strong the evidence against him, is entitled to a fair trial, [*4]and that includes having his or her case heard by a jury that finds the facts solely on the evidence, ideally via cool and detached deliberations" (People v Nevedo, 202 AD2d 183, 185 [1st Dept 1994]; see also People v Crimmins, 36 NY2d 230, 238 [1975]["[t]he right to a fair trial is self-standing and proof of guilt, however overwhelming, can never be permitted to negate this right"]). Accordingly, I would reverse defendant's conviction and remand the matter for a new trial. 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 3, 2020