People v Telfair (2021 NY Slip Op 05355)





People v Telfair


2021 NY Slip Op 05355


Decided on October 6, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 6, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
CHERYL E. CHAMBERS
BETSY BARROS
LINDA CHRISTOPHER, JJ.


2019-09807
 (Ind. No. 4576/17)

[*1]The People of the State of New York, respondent,
v
Sebastian Telfair, appellant.


Barry Krinsky, Brooklyn, NY, for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove and Jean M. Joyce of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (John T. Hecht, J.), rendered August 12, 2019, convicting him of criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is affirmed, and the matter is remitted to the Supreme Court, Kings County, for further proceedings pursuant to CPL 460.50(5).
In the early morning hours of June 11, 2017, law enforcement officials assigned to the Anticrime Unit of the 77th Precinct were on routine patrol in an unmarked vehicle in the area of Atlantic Avenue and Classon Avenue in Brooklyn, when they observed a blue Ford F-150 truck, which had been parked on a concrete median across from the Milk River nightclub, make a U-turn without having its headlights on. The truck was occupied by two individuals, and driven by the defendant Sebastian Telfair. The defendant proceeded to drive the vehicle without headlights into a gas station, and the officers pulled the vehicle over in the gas station. As the officers approached the vehicle, they smelled marijuana coming from the truck and observed a lit marijuana cigarette in the center console. The marijuana cigarette was seized by the officers, and the defendant and his friend were arrested. The officers transported the two men and the truck to the 77th Precinct. While at the precinct, the officers conducted a license check of the defendant and a vehicle registration search, and determined that the defendant's license was suspended, and that he was the registered owner of the truck. After an inventory search, the police recovered numerous items, including luggage, clothing, sneakers, jewelry, various bags, two small bags of marijuana, and cash. The officers also found a loaded 45-caliber gun in the center console of the truck, and three additional handguns and ammunition in the flatbed area.
The defendant was charged with various crimes related to weapons and ammunition possession, as well as certain vehicle and traffic violations. After trial, the jury convicted the defendant of one count of criminal possession of a weapon in the second degree in connection with the .45 caliber gun recovered from the center console of the truck. The jury acquitted the defendant of all of the other charges.
Before the jury trial, the People moved pursuant to People v Molineux (168 NY 264), [*2]to permit introduction of evidence in their case-in-chief of a 2006 uncharged crime regarding the defendant's possession of a gun, and a 2007 conviction for criminal possession of a weapon in the fourth degree, claiming that this evidence was relevant to demonstrate the defendant's intent and absence of mistake to possess the firearms on June 11, 2017.
The People asserted that, based upon their communications with defense counsel, at trial, the defendant would claim that he was having marital problems with his wife, that she had thrown him out of their home, that someone had packed the defendant's belongings in his truck, that the defendant had the truck shipped to New York, and that on June 10, 2017, the defendant flew to New York and began driving his truck unaware that the guns were contained therein. In addition, the People also sought to introduce evidence of the marijuana found in the truck on June 11, 2017, to provide proper background information and to complete the narrative, arguing that the discovery of the marijuana was inextricably interwoven to the facts of the case.
Regarding the 2006 incident, the People alleged that on February 11, 2006, the defendant—who, at the time was a National Basketball Association player for the Portland Trail Blazers—had just completed a game against the Boston Celtics. The defendant and his teammates were scheduled to travel by private plane to their next game in Toronto. During preflight preparations, a flight attendant discovered a loaded .22 caliber handgun in a pillow aboard the plane. The pillow had the photo of a child imprinted on it, and the flight attendant—who had seen the pillow before— recognized the pillow as belonging to the defendant. The flight attendant informed her captain, who contacted the Massachusetts State Police. After being advised of his rights, the defendant made certain statements to the troopers who interviewed him. The defendant stated that the gun inside the pillow belonged to his then-girlfriend, Samantha Rodriguez, and that it was legally owned and purchased by her in Portland, Oregon. The defendant stated that he had borrowed a gym bag from Rodriguez to utilize during the trip, and discovered the handgun in the bottom compartment of the gym bag while on board the aircraft in Portland. He indicated that he was not aware the handgun was in the gym bag prior to finding it. He stated that he did not know what to do with the handgun, so he placed it inside his pillow. Upon looking in the gym bag, the troopers noticed a pair of women's sneakers and cosmetics in the bag. Further investigation into the handgun confirmed that it was purchased by Rodriguez in 2005. Although the handgun was confiscated by the State Police, based upon the explanation provided by the defendant, no criminal charges were filed.
Regarding the 2007 conviction, the People alleged that on April 20, 2007, the defendant was operating his Land Rover in Westchester County when he was stopped by a police officer for speeding. A license check by the officer revealed that the defendant's New York and Florida licenses were both suspended. During an inventory search of the vehicle, police discovered a loaded .45 caliber handgun under the front passenger seat. The defendant told detectives that the gun belonged to Rodriguez, and an investigation revealed that the weapon had been purchased by Rodriguez in Portland, Oregon in 2006 [FN1]. When the defendant was asked by the detectives about the previous gun incident that occurred in Massachusetts, he lied and indicated that the gun recovered from the vehicle on April 20, 2007, was the same gun that had been recovered from the plane in 2006. The defendant was charged with criminal possession of a weapon in the second degree and other related charges. Ultimately, the defendant pleaded guilty to criminal possession of a weapon in the fourth degree and was sentenced to three years probation.
The defendant opposed the People's Molineux application, arguing that the incidents were too remote and, in any event, the probative value was outweighed by the potential for prejudice to him.
The Supreme Court granted the People's motion, reasoning that the evidence was admissible to show the defendant's intent, knowledge, and absence of mistake to possess the guns. The court found that the probative value of the evidence outweighed its prejudicial effect, and indicated that it would provide an appropriate limiting instruction to the jury at trial.
At trial, the People called retired Detective Arthur MacDonald to testify to the facts concerning the 2006 Boston incident. The People also called Police Officer Adrian Camacho and Assistant District Attorney Patrick Moore to testify to the facts concerning the 2007 Westchester County incident. The Supreme Court provided limiting instructions to the jury during the testimony of each of these witnesses. Additionally, the court also provided a limiting instruction during the People's opening statement when they discussed their intention to introduce this testimony.
"[T]he familiar Molineux rule states that evidence of a defendant's uncharged crimes or prior misconduct is not admissible if it cannot logically be connected to some specific material issue in the case, and tends only to demonstrate the defendant's propensity to commit the crime charged" (People v Cass, 18 NY3d 553, 559; see People v Hudy, 73 NY2d 40, 54; People v Alvino, 71 NY2d 233, 241; People v Allweiss, 48 NY2d 40, 46). "Evidence of prior uncharged crimes may be received, however, if it helps to establish some element of the crime under consideration or is relevant because of some recognized exception to the general rule" (People v Alvino, 71 NY2d at 241-242). Evidence of a defendant's uncharged crimes and prior misconduct may be admissible where it is relevant to a material issue in the case such as intent, motive, knowledge, absence of mistake, common scheme or plan, or identity (see People v Morris, 21 NY3d 588; People v Molineux, 168 NY at 293).
To determine whether the proferred Molineux evidence may be admitted in a particular case, the trial court must engage in a two-part inquiry: (1) the proponent of the evidence must identify some material issue, other than the defendant's criminal propensity, to which the evidence is directly relevant, and (2) the court must weigh the evidence's probative value against its potential for undue prejudice to the defendant (see People v Cass, 18 NY3d at 560; People v Hudy, 73 NY2d at 55; People v Alvino, 71 NY2d at 242). "If the evidence has substantial probative value and is directly relevant to the purpose—other than to show criminal propensity—for which it is offered, the probative value of the evidence outweighs the danger of prejudice and the court may admit the evidence" (People v Cass, 18 NY3d at 560; see People v Allweiss, 48 NY2d at 46-47).
"When [the] defendant's criminal intent cannot be inferred from the commission of the act or when [the] defendant's intent or mental state in doing the act is placed in issue, . . . proof of other crimes may be admissible under the intent exception to the Molineux rule" (People v Ingram, 71 NY2d 474, 479; see People v Kidd, 112 AD3d 994; People v Richardson, 148 AD2d 476; People v Grieco, 125 AD2d 489).
Here, the Supreme Court providently exercised its discretion in admitting the proferred Molineux evidence. The evidence was directly relevant and probative of a material element of the crimes charged, namely, the defendant's knowing possession of the guns (see People v Lawrence, 141 AD3d 1079).
Our dissenting colleague's assertion that the defendant's criminal intent could be easily inferred from the circumstances of the incident, thus rendering the Molineux evidence unnecessary, ignores the fact that the defendant asserted a lack of criminal intent theory at trial. Contrary to our dissenting colleague's assertion, the defendant placed his state of mind squarely in issue in his opening statement and throughout the trial, by pursuing the defense that "[h]e didn't know" the guns were in the truck, and that the People would be unable to prove his intent to possess the guns beyond a reasonable doubt. As the defendant's state of mind was the main question the jury was required to resolve, it logically follows that the jury had to be permitted to decide whether these prior acts of gun possession by the defendant, and the circumstances surrounding them, rebutted the defendant's claim that he lacked criminal intent to possess the guns on June 11, 2017.
Any potential for prejudice was offset by the Supreme Court's multiple limiting [*3]instructions which emphasized that the evidence was not to be considered for proof of the defendant's propensity to commit any of the charged crimes, but rather solely with respect to the issue of the defendant's knowledge or lack of mistake (see People v Morris, 21 NY3d at 689).
The defendant's contention regarding the admission of evidence of the marijuana cigarette and two bags of marijuana is unpreserved for appellate review (see CPL 470.05[2]), and in any event, without merit (see People v Villanueva, 136 AD3d 1068; People v McFarlane, 106 AD3d 836; People v Sanchez, 73 AD3d 1093).
The defendant's contention that two of the officers who arrested him gave perjured testimony in the Grand Jury is unpreserved for appellate review (see CPL 470.05[2]), and in any event, without merit. Similarly, the defendant's contention that these two officers gave perjured testimony at the pretrial suppression hearing is unpreserved for appellate review because he failed to move to reopen the suppression hearing on that ground, and in any event, is without merit (see id.; People v Coleman, 155 AD3d 1097; People v Lewis, 150 AD3d 1264; People v Bajana, 82 AD3d 1111).
The defendant further contends that the Supreme Court improperly denied his CPL 330.30 motion to set aside the verdict on the ground that "enhanced" versions of a video admitted at trial constituted new evidence and established that the officers gave perjured testimony at trial.
To successfully establish that a conviction is based on perjured testimony, a defendant must show that (1) the testimony was false; (2) the prosecution knew or should have known about the perjured testimony; and (3) there was a reasonable likelihood that the perjured testimony affected the outcome of the trial (see United States v Agurs, 427 US 97, 103). Here, the evidence relied upon by the defendant failed to establish these elements.
Contrary to the defendant's contention, the Supreme Court properly denied his application to release the psychiatric records of a witness. Psychiatric records are confidential, but they may be disclosed upon a finding by a court that the interest of justice significantly outweighs the need for confidentiality (see Mental Hygiene Law § 33.13[c][1]). Here, the court reviewed the records in camera and properly determined that the records did not contain material bearing on the reliability and accuracy of the witness' testimony (see People v Gissendanner, 48 NY2d 543, 549-550; People v Brooks, 199 AD2d 275).
Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621), we find that it was legally sufficient to support the defendant's conviction of criminal possession of a weapon in the second degree (Penal Law § 265.03[1][b]). Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383; People v Bleakley, 69 NY2d 490). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Romero 7 NY3d 633).
The defendant's remaining contentions are without merit.
LASALLE, P.J., CHAMBERS and CHRISTOPHER, JJ., concur.
BARROS, J., dissents, and votes to reverse the judgment, on the law, and order a new trial, with the following memorandum:
I.
At issue on this appeal is whether the People may prove that the defendant knowingly possessed firearms when he was arrested on June 11, 2017, by introducing evidence on their direct case that the defendant had previously possessed different firearms on two prior occasions more than [*4]a decade before his arrest. In my view, the admission of such evidence is plainly barred by the Molineux rule (see People v Molineux, 168 NY 264; People v Singleton, 139 AD3d 208), and does not, contrary to the majority's position, fit within the state-of-mind exception to the Molineux rule. Indeed, the majority's broad construction of the state-of-mind exception allows that exception to entirely swallow the Molineux rule, and ignores the conditions on the use of that exception as set forth in People v Ingram (71 NY2d 474). In any event, under the circumstances, the risk of undue prejudice to the defendant vastly outweighed any probative value that such evidence had on the issue of the defendant's knowledge of the presence of the specific guns packed into his vehicle on June 11, 2017, and the Molineux error was not harmless.
II.
On June 11, 2017, the defendant and another person were arrested after a traffic stop of the defendant's pickup truck. During an inventory search of the pickup truck, which was packed with the defendant's personal belongings, the police recovered 111 pieces of clothing, 97 pairs of sneakers, jewelry, electronics, luggage, duffle bags, three guns in the flatbed area of the truck, and a gun located in the center console of the vehicle's interior cabin. There was no dispute that the vehicle was owned by the defendant, and that all of the guns recovered in the vehicle were legally purchased and registered in the State of Florida by the defendant. During the trial, the People introduced evidence that, due to marital difficulties, the defendant moved out of his home in Florida, and his pickup truck had been packed with his personal belongings and transported from Florida to New York. There was evidence that the defendant hired a mover and a towing company, and that, at the time of the defendant's arrest, he had only recently come into possession of his pickup truck in New York.
Before the trial, the People moved to present prior uncharged crimes and bad acts under the state-of-mind exception to the Molineux rule. The People argued that the prior incidents of gun possession, which occurred more than a decade before the subject arrest, were necessary to show an "absence of mistake" in the defendant's possession of the guns on June 11, 2017. Although the record of the defendant's former counsel's opposition to the People's Molineux application was unavailable, the defendant's trial counsel opposed the People's application arguing that the defense was not that the defendant mistakenly possessed guns on June 11, 2017, but rather, that the evidence would not prove, beyond a reasonable doubt, that the defendant knowingly possessed the specific guns that he was charged with possessing. The defendant contended that the People were improperly attempting to use the prior incidents of gun possession to show that he has a propensity to illegally possess guns, and that any probative value of the prior incidents was outweighed by the undue prejudice to the defendant. The Supreme Court granted the People's application to permit the admission of evidence and surrounding circumstances of the prior incidents of gun possession.
At trial, the People then introduced evidence, including witness testimony from a Massachusetts detective, that in February 2006, when the defendant was employed as a professional basketball player, a flight attendant on the team plane recovered a pistol, registered to the defendant's then-girlfriend, Samantha Rodriguez, in a pillow that was imprinted with a photograph of the defendant's baby. At that time, the Massachusetts detective accepted the defendant's candid and forthright explanation that he had accidentally grabbed Rodriguez's gym bag containing the gun while packing for his trip. The detective testified that he inspected the gym bag and it contained Rodriguez's clothing and cosmetics. The defendant was not charged with any crime, and the pistol was returned to its lawful owner, Rodriguez.
The People also introduced evidence, including testimony from a police officer and an assistant district attorney, that in April 2007, in Westchester County, the defendant's vehicle was stopped for speeding, and the defendant did not have a valid driver license. Upon searching the defendant's vehicle, a police officer found a gun under the passenger seat. After the defendant's then-attorney proffered, inter alia, that the gun belonged to the defendant's then-wife, Rodriguez, and that the vehicle was primarily used by Rodriguez, the People permitted the defendant and Rodriguez to plead guilty to misdemeanor charges.
III.
Evidence of bad acts and uncharged crimes is generally excluded under the Molineux rule "to avoid the danger that the jury will 'misfocus . . . on [the] defendant's prior crimes rather than on the evidence—or lack of evidence—relating to the case before it' (People v Rojas, 97 NY2d 32, 36-37), and will, even though not fully convinced of the defendant's guilt of the crime charged, nevertheless 'find against him [or her] because his [or her] conduct generally merits punishment' (People v Allweiss, 48 NY2d 40, 46; see People v Gillyard, 13 NY3d 351, 355-356; People v Arafet, 13 NY3d 460, 464-465)" (People v Wilkinson, 71 AD3d 249, 253).
"[U]nder our Molineux jurisprudence, we begin with the premise that uncharged crimes [and bad acts] are inadmissible and, from there, carve out exceptions" (People v Resek, 3 NY3d 385, 390). Evidence of bad acts or uncharged crimes may be admitted under the intent or state-of-mind exception to the Molineux rule when either (1) the defendant's criminal intent cannot be inferred from the commission of the act; or (2) when the defendant's intent or mental state in doing the act is placed in issue by the defendant (see People v Ingram, 71 NY2d at 479; People v Wright, 121 AD3d 924, 927).
Here, the People failed to show either of the conditions necessary to meet the state-of-mind exception to the Molineux rule. First, the defendant's criminal intent, i.e., knowing possession of the gun, can easily be inferred from the circumstances. The People introduced evidence that the guns were purchased by and registered to the defendant, that the vehicle was owned by the defendant, that the defendant occupied the vehicle at the time of the arrest, that one of the guns was found in the center console in the interior cabin of the truck and, significantly, that a witness had seen the defendant put a gun in the vehicle (see generally Penal Law § 265.15[3] ["(t)he presence in an automobile . . . of any firearm . . . is presumptive evidence of its possession by all persons occupying such automobile at the time such weapon . . . is found"]). The Supreme Court specifically instructed the jury that the act of possession permits an inference that such person knows what he possesses (see CJI2d[NY] Culpable States-Knowingly).
Secondly, the defendant's intent or mental state was not placed in issue by the defendant. The defendant did not give a post-arrest statement to law enforcement officials, and did not testify at trial (see People v Blair, 90 NY2d 1003, 1005 ["Although evidence of prior uncharged crimes may have been relevant to show intent, knowledge or the absence of mistake or accident, whether defendant . . . mistakenly or accidentally sold or possessed the drugs was never placed in issue by defendant"]).
Defense counsel's mere argument that circumstantial evidence presented by the People on their direct case would fail to establish, beyond a reasonable doubt, the defendant's guilt, including the element of knowing possession of the guns, did not open the door to the Molineux evidence. Indeed, the Supreme Court admitted the Molineux evidence in a pretrial ruling. A defendant does not open the door to introduction of otherwise inadmissible evidence by remaining silent, and merely arguing that the People cannot meet their burden of proof. To hold otherwise eviscerates the Molineux rule.
The majority notes that the premise of the People's Molineux application was the Assistant District Attorney's pretrial "communications" with the defendant's former counsel Edward Hayes in which Hayes indicated that the defendant would claim mistake. However, those pretrial "communications" are dehors the record, and appear likely to have been made in the context of plea negotiations. Critically, the defendant's trial attorneys, Barry Krinsky and Richard Southard, who replaced Hayes after Hayes became unavailable due to a personal issue, expressly stated on the record that the defendant was only arguing that the People could not prove, beyond a reasonable doubt, that the defendant knowingly possessed the specific guns, not that the defendant mistakenly possessed those guns. Once the defendant's former counsel was replaced by new attorneys who represented to the Supreme Court that the defendant would not claim mistake, the main premise of the People's Molineux application was rendered moot. Thus, there was no basis at all to allow the People to introduce Molineux evidence on their direct case.
Even assuming, arguendo, that the 2006 and 2007 incidents were somehow admissible under the state-of-mind exception to the Molineux rule as construed by the majority, such evidence is only admissible upon weighing its probative value against the risk of undue prejudice to the defendant (see People v Morris, 21 NY3d 588, 595; People v Cass, 18 NY3d 553, 560). "Factors which play a part in measuring probative value are 'the degree to which the evidence persuades the trier of fact that [a] particular fact exists and the [logical] distance of the particular fact from the ultimate issues of the case'" (People v Ventimiglia, 52 NY2d at 350, quoting Dolan, Rule 403: The Prejudice Rule in Evidence, 49 So Cal L Rev 220, 233). "'The court should not permit the admission of other crimes [or bad acts] until it has ascertained that the evidence tends logically and by reasonable inference to prove the issue upon which it is offered, that it is offered on an issue material to the prosecution's case, and is not merely cumulative'" (People v Ventimiglia, 52 NY2d at 360, quoting People v Stanley, 67 Cal 2d 812, 818-819, 433 P2d 913, 917). "Important in the weighing process will also be how the evidence comes into the case, that is, whether at the instance of the People initially, or in rebuttal to a defense offered by the defendant" (People v Ventimiglia, 52 NY2d at 360; see People v Tas, 51 NY2d 915).
Here, the People failed to establish, and the majority fails to explain, how the 2006 Massachusetts incident and the 2007 Westchester incident had probative value on the issue of whether the defendant knew of the presence of the specific guns in his pickup truck that he was charged with possessing on June 11, 2017. Indeed, the 2006 Massachusetts and the 2007 Westchester incidents were remote in time and place from the subject incident, involved different guns, and were disconnected from the chain of events leading up to the defendant's arrest (see People v Scaringe, 137 AD3d 1409, 1417 [finding Molineux error where "(t)he alleged prior bad acts were extremely remote in time" and where there were significant factual differences between the prior bad acts and the subject incident]). "The mere fact that [the defendant was] in possession of a different gun in the past is not probative of whether [he] knowingly possessed the weapon [he was] charged with possessing" (People v Singleton, 139 AD3d at 213; see People v Ball, 154 AD3d 1060, 1064 ["The prior bad acts alleged to have been committed by defendant were unrelated to the victim, having occurred roughly two or more years prior to the day in question, and would serve only to demonstrate that defendant had a propensity to initiate and/or engage in physical altercations"]; People v Fuller, 197 AD2d 881, 881 ["In our view, the underlying facts of a prior, unrelated burglary had little, if any, probative value with respect to (the) defendant's intent to commit the present crime"]; People v Irby, 79 AD2d 713, 714 ["Since in the instant case the prior assault involved a different victim, it had little, if any, bearing on the issue of lack of accident, or even intent, with respect to the crime in question"]).
Indeed, it is unclear from the People's arguments, the Supreme Court's ruling, and the majority's determination, how the defendant's accidental possession of Rodriguez's gun on an airplane in 2006, or the presence of Rodriguez's gun in a vehicle that the defendant was operating in 2007, evinces that the defendant was aware that his own guns were packed in his own pickup truck in 2017. Thus, the admission of evidence of the defendant's prior incidents of gun possession in 2006 and 2007 was not shown to have any probative value in determining the issue of whether the defendant knowingly possessed the subject guns on June 11, 2017.
The potential for undue prejudice to the defendant upon admission of such evidence, however, was enormous. The admission of the prior incidents of gun possession served not only to show that the defendant had a propensity to illegally possess guns, but also conveyed other prejudicial information about the defendant, including that he had placed the gun from the 2006 incident in a pillow that was imprinted with his baby's photograph, and that, during the 2007 Westchester incident, he was operating a vehicle at an excessive rate of speed without a valid driver license. In addition to that prejudicial material, the People also presented other collateral and prejudicial matter during the trial, including, among other things, that the arresting officers detected a strong odor of marijuana emanating from the defendant's pickup truck prior to his arrest; multiple [*5]photographs regarding the defendant's alleged possession of marijuana;[FN1] testimony from the defendant's estranged wife that the defendant had, without her permission, taken her vehicle and personal belongings, including jewelry valued at approximately $250,000, and given some of those belongings to his paramour; and testimony from the paramour that the defendant physically assaulted her causing visible injuries, and that the police accompanied her to the hospital, where she received medical attention.
Under the circumstances of this case, there was a very high risk that admission of the Molineux evidence would misdirect the jury from considering the admissible evidence regarding the defendant's knowledge of the specific guns he was charged with possessing, and, instead, find against the defendant merely because his overall conduct and character generally merits punishment (see People v Gillyard, 13 NY3d at 355-356; People v Arafet, 13 NY3d at 464-465; People v Allweiss, 48 NY2d at 46; People v Wilkinson, 71 AD3d at 253). With the Molineux ruling, the defendant had to, in effect, defend himself against allegations arising from three separate incidents of gun possession occurring over a decade, as well as various claims made by his estranged wife and paramour (see People v Robinson, 68 NY2d 541, 550 [prejudice may be established where Molineux evidence creates a trial within a trial that is likely to cause jury confusion]).
IV.
The erroneous admission of uncharged crimes or bad acts is harmless "where 'the proof of the defendant's guilt, without reference to the error, is overwhelming'" (People v Arafet, 13 NY3d at 467, quoting People v Crimmins, 36 NY2d 230, 241) "and where there is no 'significant probability . . . that the jury would have acquitted the defendant had it not been for the error'" (People v Arafet, 13 NY3d at 467, quoting People v Crimmins, 36 NY2d at 242; see People v Wilkinson, 71 AD3d 249, 256).
Here, I cannot conclude that there was no significant probability that the jury would have acquitted the defendant had it not been for the Molineux error, as compounded by the prosecutor's summation and the Supreme Court's jury instructions. During his summation, the prosecutor argued that the jury could find that the defendant knowingly possessed the subject guns on June 11, 2017, since the defendant had illegally possessed guns in the past and had previously claimed on those occasions that his gun possession was a mistake. Given how remote, disconnected, and dissimilar the prior incidents of gun possession were from this incident, such argument was nothing more than an improper propensity argument (see People v Wilkinson, 71 AD3d at 256).
Moreover, the Supreme Court instructed the jury, among other things, that it could use the 2006 Massachusetts and 2007 Westchester incidents "to prove [the defendant's] knowledge of the items he's charged with possessing in Brooklyn on June 11, 2017, in the absence of mistake or accident, with regard to his knowing possession of those items on that date, June 11, 2017." During deliberations, the jury sent a note asking, "how is the jury allowed to use the evidence from the Westchester and Boston firearm incident[s] for and not allowed to use it for, e.g., knowledge or lack of mistake as to what?" This note evinced that the jury rightfully could not figure out how the incidents from 2006 and 2007 could possibly show the defendant's knowledge or lack of mistake regarding his possession of entirely different guns in 2017. In response to the note, the court merely reread the same vague and confusing instruction which improperly permitted the jury to consider those remote and unrelated incidents as evidence that the defendant had knowledge that there were firearms in his pickup truck on June 11, 2017. Soon after the court responded to the note, the jury returned with a guilty verdict on one charge, and an acquittal on the rest of the charges.
Given the prosecutor's summation advancing a propensity argument, the Supreme Court's erroneous Molineux instructions, and the jury note highlighting the jury's confusion regarding how the Molineux evidence from 2006 and 2007 could possibly be used to show [*6]knowledge in 2017, the court's Molineux error cannot be deemed harmless.
V.
If, as my colleagues maintain, the state-of-mind exception to the Molineux rule allows the People to introduce evidence on their direct case of two unrelated incidents of prior illegal gun possession in 2006 and 2007 to prove that a defendant knowingly possessed entirely different guns in 2017 under circumstances where, as here, the defendant has not given any statement or testimony, then such raises the question whether the Molineux rule has any vitality in the Second Department (compare People v Huertas, 186 AD3d 731, with People v Ball, 154 AD3d 1060; People v Singleton, 139 AD3d 208). For all the foregoing reasons, I vote to reverse the judgment of conviction, and order a new trial.
ENTER:
Maria T. Fasulo
Acting Clerk of the Court



Footnotes

Footnote 1:The People alleged that a subsequent investigation by the Bureau of Alcohol, Tobacco, Firearms and Explosives revealed that the defendant was present with Rodriguez when the gun was purchased, that the purchase was charged to the defendant's credit card, and that the defendant signed the credit card receipt.

Footnote 1:The Grand Jury voted "no true bill" as to the marijuana charges.